ANDERSON KILL P.C.

Attorneys and Counselors at Law

7 TIMES SQUARE, 15TH FLOOR ■ NEW YORK, NY 10036
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.AndersonKill.com

Samuel M. Braverman, Esq.
SBraverman@AndersonKill.com
Direct Tel. 212-278-1008

June 8, 2026

Re: *United States v. Jamie Orsini*
Dkt.: S1 23 Cr 402 (02) (PMH)

Hon. Philip M. Halpern
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10036

Dear Judge Halpern:

Per the Court's order, I enclose here the objections and corrections to the Presentence Investigation Report (rev. 4/20/2026). I have "met and conferred" with the Government in this case, and I understand that they will dispute several of these objections.

Cover page: My law firm's address is: 7 Times Square, 15th Fl, NY, NY 10036

PSR ¶ 8 Jamie Orsini and Steven Kraft met in 2005. Jamie and Steven Kraft ended their romantic relationship in 2008, although they continued to live in the same building until 2011, when they separated. They were legally divorced in 2012.

PSR ¶ 10 Jamie challenges the assertion that the Family Court was committed to change the custody arrangement with the two Kraft children. What are the family court sources for Steven Kraft's optimism that child custody and visitation would be changed? The Family Court records reviewed by me show no indication that Steven Kraft was about to get custody of his children.

PSR ¶ 12 Nicholas Orsini told Jamie that the painting supplies purchased at the Home Depot were for a work project that he was going to do.

PSR ¶ 13 Nicholas Orsini drove the "circuitous route". Jamie had nothing to do with the choice of route taken by Nicholas Orsini.

PSR ¶ 14 Nicholas Orsini drove the route chosen, and Jamie had nothing to do with the route taken by Nicholas Orsini. Further, it was the <u>younger</u> daughter's cellphone (as the older daughter does not have a cellphone) that traveled on a route, not their <u>older</u> daughter. Life360 was installed on Sidney's phone, and

she is a child of Steven Kraft and Jamie, not Nicholas Orsini. Nicholas drove the second travel described in this paragraph.

PSR ¶ 15 Nicholas Orsini purchased the “burner phones”, not “the Orsini’s”, Nicholas Orsini bought the phones at Sam’s Club, not “they”, Nicholas Orsini drove the car trips described in this paragraph, and Jamie was not in the stores for the described purchases.

PSR ¶ 16 It is the younger daughter’s cellphone (as the older daughter does not have a cellphone). Nicholas Orsini did the driving and chose the route, as Jaime did neither the driving nor chose any route of travel. [***See note about the time and check against TT.]

PSR ¶ 17 Jamie denies that she had any purpose at the Sonic food store other than to order food. Nicholas Orsini drove the vehicle, chose the route, and whatever his purpose was, he did not share it with Jamie. There is no objective source that confirms that “their primary purpose was to watch Kraft” (other than law enforcement speculation.)

PSR ¶ 18 Nicholas Orsini may have continued to prepare for a murder, but Jamie Orsini did nothing to prepare for a murder and objects to the phrase “Orsinis continued preparing for the murder and carjacking” (as well as all uses of “they” in this paragraph, which should instead be “Nicholas Orsini”.)

PSR ¶ 19 It is the younger daughter who has a cellphone. Kraft did not enter the home with Jamie, although he was murdered by Nicholas Orsini at some point and was seen in the basement by Jamie when he was already deceased.

PSR ¶ 21 Jamie was not present for the disposal of Steven Kraft’s car. Nicholas Orsini did all of the post-homicide actions described herein.

PSR ¶ 23 Jamie was not present for any of the post-homicide actions described herein. Nicholas Orsini is the person who tried to contact a taxi company, not Jamie.

FN3, p8 The three “facts” described in points 1, 2, and 3 of this footnote each describe actions by “the Orsinis” but should instead be “Nicholas Orsini” (other than as used in “Orsinis home.”

PSR ¶ 25 Nicholas Orsini specifically directed Jamie to send the texts described in this paragraph.

PSR ¶ 26 Nicholas Orsini did the actions detailed in this paragraph.

PSR ¶ 27 Jamie did not live on the Nicholas Orsini family farm in Amsterdam, New York.

PSR ¶ 28 Nicholas Orsini also did an internet search using the terms “How long does it take for a body to decompose” (or words to that effect.) Nicholas Orsini also

called his mother (in Jamie's presence) and asked if his sister was at the family home in Amsterdam.

PSR ¶ 29 Nicholas Orsini drove Jamie and the body of Steven Kraft in the family car and Nicholas Orsini alone buried the remains of Steven Kraft while Jamie remained in the car.

PSR ¶ 31 Nicholas Orsini did all the driving described in this paragraph. Nicholas Orsini bought all the items described in this paragraph, not Jamie. Nicholas Orsini did the burn, not Jamie. What was burned was the tools Nicholas Orsini had used in the murder and disposal of Steven Kraft and his body. The body of Steven Kraft was buried in Amsterdam, New York. (The smell of the burning materials as described by the neighbor, are consistent with burning of the tools and tarps used for the homicide, rather than the physical remains of Steven Kraft.)

PSR ¶ 33 Nicholas Orsini purchased the burner phones; the burner phones were "their" phones.

PSR ¶ 35 All texts sent between Jamie and Nicholas Orsini were at Nicholas Orsini's direction and under duress.

PSR ¶ 36 All statements described here made by Jamie to law enforcement were at the direction of Nicholas Orsini and under duress.

PSR ¶ 38 Nicholas Orsini did the driving described herein and chose the route. Since Nicholas Orsini knew where he dropped off Steven Kraft's car, he knew where he was driving in Newburgh, NY.

PSR ¶ 39 Nicholas Orsini was not intoxicated on the morning when he took the body of Steven Kraft to Amsterdam, New York and buried it.

Further, Jamie has offered on multiple occasions to show the government where Nicholas Orsini buried the body, and she should have been given the same opportunity to do so as Nicholas Orsini. Jamie offered this through undersigned counsel on the first day I was assigned to this matter (September 8, 2025), as well as on October 1, 2025, April 10, 2026, April 16, 2026, May 8, 2026, May 26, 2026, and numerous additional times by correspondence. From the "meet and confer" with the Government last week, the Government reiterated that it would not meet with Jamie on this topic at all. It indicated that it intends to submit to the Court information about the work it did in furtherance of Nicholas Orsini's failed effort to show law enforcement where Steven Kraft's remains are located. That is neither here nor there, as Jamie should not be given less of an opportunity that her co-defendant, particularly since, six years after the disappearance of Steven Kraft, he remains missing and no stone should be left unturned to find him (notwithstanding the Government's opinion about Jamie.)

Jamie through counsel also contacted the New York State Police and the Dutchess County District Attorney's Office to offer assistance in producing Steven Kraft's remains. The NYSP had the case agent in this matter contact me, and although he confirmed that the NYSP would very much want to meet with Jamie to get information to help find the remains to provide the family with closure, he would need to speak with the government. He was never heard from again.

PSR ¶ 43 Jamie should not be assessed an enhancement for Obstruction of Justice under §3C1.1 and Application Note D. Jamie objects to the Government's anticipated proposed enhancement for obstruction of justice. Nicholas Orsini was the individual who purchased the burn bins, burned the painting supplies used in the murder, and buried the remains of Steven Kraft.

PSR ¶ 47 The base offense level should be:

20 base offense level pursuant to §2B3.1
+6 levels for permanent or life-threatening bodily injury (§2B3.1(b)(3)(C)
<u>+2</u> levels for a carjacking (§2B3.1(b)(5)
28 total offense level

Jamie further objects to the enhancement under §2B3.1(c) Cross Reference to 18 USC §1111, and USSG §2A1.1 base offense level 43 and its presumptive life sentence (see §2A1.1 Application Note 2(A). If this objection is overruled, then the Court should consider §2A1.1 Application Note 2(B), which refers to Felony Murder (for a person who did not commit the actual murderous act) and a reference to Second Degree Murder, which under §2A1.2, the base offense level is 38.

PSR ¶ 51 See note at PSR ¶43 above.

PSR ¶ 63 Jamie's father died of complications from AIDS. Jamie's mother married Daryl Lloyd, who she knew from the neighborhood, not childhood.

PSR ¶ 64 One of Jamie's paternal half siblings is named Takayah Tylor, approximately 46yo. She has no further information about Ms. Tylor. Leah Past<u>r</u>ano (not Pastano) is a maternal half-sibling.

PSR ¶ 65 Jamie was raped by a friend of her older brother when Jamie was 14yo.

Jamie's sister Lea<u>h</u> (not Lea) verbally abused Jamie when they were young.

PSR ¶ 68 Kraft and Jamie were married within days of their first meeting, not within "weeks."

PSR ¶ 70 Jamie called Middletown Police regarding these diaries and provided them to the police prior to the family court matter commencing.

FN 5 Notwithstanding the conclusion of CPS, [redacted] Kraft stands by her assertion of sexual abuse by her father against her and her sister.

PSR ¶ 71 [redacted]

FN 6 At the "meet and confer", the government indicated that some of the information provided by the CPS worker was conveyed directly to the AUSA, has not been reduced to a writing, and so Jamie has little opportunity to confront this assertion. [redacted] Kraft is available to testify before this Court on this issue of her father's history of abuse against her and her sister.

PSR ¶ 72 [redacted] Orsini II (not Junior) and his brother enjoy good physical health, but both suffer from PTSD and anxiety from their parents incarceration and the domestic violence in the family home.

PSR ¶ 73 It was a friend who gave Jamie a ride to her storage facility to sleep after an evening of domestic abuse by Nicholas Orsini.

PSR ¶ 75 Jamie and Steven Kraft lived for a period of time in North Carolina near Camp Lejeune.

Nicholas and Jamie Orsini were still living at 90 Brookside Avenue at the time of arrest as 526 North Market Street, Johnstown, New York was still being renovated.

PSR ¶ 79 The neuropathy is in Jamie's extremities.

PSR ¶ 81 Jamie continues on the same mental health medications while in MDC, but they provide little relief and have significant side effects.

PSR ¶ 84 The bullying and beatings took place in primary school. The family moved when Jamie was in high school.

PSR ¶ 86 Jamie obtained her paralegal certificate through an outside agency and not through the BOP. This course was paid for by a friend.

PSR ¶ 88 Jamie had a series of temporary and part-time jobs, as will be described in the mitigation submission, She has not held a full-time position in a public or private company.

PSR ¶ 94 See above objections at PSR ¶¶ 43, 47, and 51.

Respectfully submitted,

*Sam Braverman*

Samuel M. Braverman, Esq.
National Co-Chair,
Government Enforcement,
Internal Investigations, and
White-Collar Defense Group